Good morning, Your Honors. I'm here, I represent Ms. Sandburg. My name is Justin Prado, and I'm here to argue her case that she should, that her case should be remanded back to Social Security for a re-decision of her benefits applying the proper law. This case is just another example of the Social Security's ALJs not following the Ninth Circuit precedents regarding subjective symptoms and pain. This case commits the same error that this court has seen time and time again in cases that were cited to my brief such as Brown-Hunter or Smolgen or Virgen in that the ALJ laundry lists 29 paragraphs, as I laid out in my brief, of medical with no discussion about how those medical, that medical is inconsistent or consistent with any of my client's subjective symptoms and testimony. My client testified that she had difficulty due to pain lifting, standing, walking. She could, some of her doctors, which the opinions he didn't accept, stated that she was limited in these areas. Nowhere does the ALJ discuss with any kind of detail that's required under the case law why these tests are inconsistent with her testimony. So what, her medical conditions, her medical conditions, they were consistent with having those subjective symptoms, correct? Yes. Diagnosed medical conditions. Yes. She was found in the case to have degenerative disc, fibromyalgia, dendral disc of the spine, Riemann's disease. Now the judge did state the one part where he says her testimony was inconsistent, the one paragraph. He states that she said she experienced pain from one of her conditions that was found not to be existent. So I will say that the ALJ found that she said she was receiving, she had pain from this particular condition, but then the ALJ found that in the medical that condition was not found to actually, but as I argued in my papers, my client is a layperson. It's not, she's not going to know which exact condition is causing which problem. All she knows is that she's in pain. And I think that in this case that the ALJ just did not explain why he came, to me the RFC that is provided in this case, it seems like it comes out of almost nowhere. And what was the RFC in this case? Refresh my memory on that. It was a reduction to light, which would be 10 pounds, 20 pounds lifting, 6 hours max stand, stand, sit, walk. There were additional restrictions that had to do with no stooping, hazardous exposure. And then the judge did found that she required the use of a cane because she does require the use of a cane. And if you look at this RFC where he states that she needs to use a cane, yet she can stand and sit and walk for 6 hours and an hour a day in a work, and that's the other key I'm going to get to with the daily activities. This is in a work context. As the court has routinely stated, the difference between doing things at home when you can take your time, you can lay down, you can put your foot up, and having to be strenuously working for 6 to 8 hours, especially with the light jobs that were found where she'd be standing almost the entire day, it's different. And the judge needs to provide clear and convincing evidence as to why the medical, things like the grip strength is at 4. I mean, how does that relate to her ability to carry? How does that relate to her ability to stand? It doesn't. Well, we've said before that the judge doesn't need to go line by line comparing things. As you've opened your argument, the ALJ was quite exhaustive in going and listing the abundant medical evidence that was relied upon there. So what more would you have the ALJ do in this case? At least some discussion of how that medical is inconsistent with her statements. No word does he say, I don't believe she can only lift 3 pounds because, look, she has this particular test or this particular grip strength, or she said this to her doctor. And I'm not looking for a line by line of every piece of testimony, but at least something to justify the RFC. And the only other thing that he provides is with the daily activities, which, again, there's no discussion of how these, what I would consider mundane, everyday life activities such as, I believe he put brushing her teeth is one of the daily activities that he found that was inconsistent with her pain testimony. But why isn't the ALJ's decision to rely on the abundant medical evidence enough given our deferential standard of review? I believe under the case law that just objective evidence, just because there's no objective evidence to support the extent of the pain, that in and of itself does not defeat the pain testimony. The ALJ is required to either show inconsistencies or use other evidence such as activities of daily living in order to discount that pain testimony. Because if objective tests, if just listing the objective tests and stating this defeats your pain testimony was enough, there would be no need for the ALJ to weigh other evidence. I mean, the objective tests would show pain or would not show pain. But as I believe this Court has recognized multiple times in the past, pain is difficult. Pain is, there are many, so there are not tests that can show pain in many cases. And in this circumstance, just relying on saying there's these tests and some of these things are negative and some of these things are not is not enough under the precedent to defeat my client's pain testimony. So how do you distinguish SMART where we suggest where the allegation is that the pain is entirely debilitating, that daily activities are relevant to contradicting that? I agree. I think in the SMART case, the ALJ did a better job of going through and actually providing an analysis in that case than compared to this one. But additionally, I don't believe my client is stating her pain is completely debilitating. I think my client gives a list of limitations, her ability to stand, sit, lift things, that I don't believe she's saying that she can't do anything. And then also, on the counter end, pain, it's not the plaintiff's or the claimant's burden to prove that they're completely debilitated. That's been a ruling many times, particularly in the Gerson case, and again in the Solman case and the Vertigin case, that you don't have to be completely bedridden to qualify for benefits. And so all we're asking is for the ALJ to look through and explain how he came to an RF, where he finds a client, a person who has multiple degenerative discs, needs to use a cane, fibromyalgia for pain. How does he come to an RFC of light work, stand, sit, six hours, lift, without any explanation when the client's stating that she can't do that due to her pain? All we're asking is, show me on the test how that is done. Daily activities, how is going to the church counter anything that my client said? How does meeting with people at her house counter any of the testimony? How is it inconsistent? The ALJ likes to say it's inconsistent, but doesn't explain why these things are inconsistent. And again, some of them are as mundane as brushing her teeth, or I believe it was cooking, light cooking, I believe was one. And these are things that people need to do every day, and they shouldn't be penalized for trying to live their life with their disability. And all we're asking is that explain. Explain how these things are inconsistent with what my client said her limitations are. I understand that the ALJ does not have to just take my client's limitations on their face, but I would expect, especially after so many different rulings with very similar cases where the judge uses a laundry list of medical, then just states that these mundane daily activities are inconsistent with the pain testimony, and rules that the client can do a light RFC or a medium RFC, when they really can't, without further explanation. And that's what our position is, is really this decision doesn't have the explanations that it's required to have. All right. Thank you, counsel. You're slightly over your time. We will hear from the government, and then if you need a minute for rebuttal, let me know. Okay. I think I asked for five minutes. Five minutes. Well, I don't think, since you're over, I don't think you get five minutes. Okay, no problem. But we'll see what counsel argues. Thank you. How we proceed. Okay. Thank you. Good afternoon, Your Honor. Katherine Watson for the commissioner. Good afternoon. My, counsel, good morning. Good morning, really. Maybe it's afternoon to you. My counsel argued that the AOJ did not sufficiently explain her findings when discounting the claimant's testimony, Sandberg's testimony. I'd like to note that the very cases that counsel cited outlines the standard that the findings need only be sufficiently specific to allow this court to conclude that the AOJ rejected the testimony on permissible grounds and did not arbitrarily discount the testimony. What that means is outlined in Brown v. Hunter, Brown-Hunter, is that the AOJ identifies the testimony that she finds not credible, and then she discusses the evidence that undermines that testimony. And that is exactly what we have here. On car 17 through 18, the AOJ discusses Sandberg's allegations of debilitating limitations. I note these are quite extreme allegations. She's arguing that she cannot lift more than three pounds, that she can stand minutes at a time, walk minutes at a time, sit minutes at a time. And the AOJ then, on car 23, references back to those very allegations and says that those allegations of disabling symptoms and limitations are inconsistent with the imaging and electrodiagnostic studies, laboratory studies, Dr. Karamloo's exam, treatment history, activities, and medical opinions as detailed above. The AOJ previously had detailed that evidence. So there is sufficient linkage here. In addition to that, as Dr. Johnstone noted, excuse me, Judge Johnstone noted, the AOJ does not need to go through a line-by-line exegesis of the claimant's testimony, even though the AOJ doesn't need to do that. The AOJ did line-by-line on car 13 through 16, again on car 23, reference very specific testimony that the medical record contradicted. For example, on car 14, where the AOJ discusses the electrodiagnostic studies in the records, the AOJ says, despite claims of significant symptomology and limitation in the hands, electrodiagnostic studies showed mild carpal tunnel syndrome. On car 23, the AOJ discusses how the Sandberg alleged significant limitations from scleroderma, and yet her provider ruled out that diagnosis because workup or laboratory testing here was negative. Again, on car 23, Sandberg had alleged testimony of bony growths from ankylosing spondylitis, and yet Dr. Karamloo noted that there was no support for that diagnosis. So the AOJ nevertheless gave Sandberg the benefit of the doubt, found it a significant impairment, but noted that the imaging that the AOJ discussed earlier was generally unremarkable of the lumbar spine or revealed mild findings. On car 18, the AOJ discussed how an MRI showed minimal sacroilitis, and again, this contradicts her testimony that her sacroilitis was very troublesome, affected her ability to sit, stand, walk. The AOJ also discussed her allegations of shoulder pain, yet on car 18 and 22, discusses how imaging of her shoulder was normal. The AOJ discussed how it was inconsistent with medical opinions. The AOJ found on car 22, every doctor, Dr. Karamloo as well as state agency medical consultants, found that she could perform a range of light work. I note this is where the AOJ developed the RFC, however, the AOJ's RFC was actually more restrictive than every single doctor who assessed her functioning, and by doctor I mean a physician here, so we do have a chiropractor. I'm troubled by the fact that she has to use a cane, a walker, and a scooter, and how is that consistent with the types of work that the AOJ found in the RFC? Yeah, thank you for that. The AOJ did find that she could use a cane anytime that she walked, and looking at the medical evidence, the AOJ does appear to give her the benefit of the doubt here. She was, there was medical evidence showing a normal gait, and there was medical evidence showing that she used a cane. So I don't believe there was evidence from doctors saying that she needed a cane, I don't believe the cane was prescribed, but looking at that evidence as a whole, as the AOJ is required to do discuss evidence both that supports and also evidence that detracts from her claim, the AOJ did seem to give her the benefit of the doubt there and found that if she needed to walk, she could use a cane. And the jobs that the vocational expert testified that every single job that the vocational expert found that she could perform would allow for that. But I would note that that need for a cane every time she walked was a generous finding in favor of Sandberg, that Dr. Karamloo found that she would only need a cane to walk long distances. The state agency medical consultants reviewed the record and found she would not need to use a cane at all. So the AOJ is giving her some benefit here, but according to the EE testimony, she could perform a significant number of jobs in the national economy with the use of the cane every single time that she walked. I would also note the AOJ specifically referenced the opinions when discounting her testimony. So here, for example, Dr. Karamloo, he opined that she could perform a range of light work. This would be up to 20 pounds of lifting. This would be sitting and standing up to six hours a day. This directly conflicts with her testimony that she could lift only three pounds, that she could walk, sit, stand minutes at a time. So we have clear contradiction here and under Carmichael, the AOJ can discount a claimant's testimony in favor of a contradictory opinion. That's what we have here. The AOJ also referenced Dr. Karamloo's exam. He describes on card 22 what Dr. Karamloo's exam says. It shows largely normal findings. So, for example, she alleged that she could lift up to three pounds. Dr. Karamloo's exam shows normal strength, including normal grip strength. It actually, if one turns to card 1133, actually shows on the top of that that she could generate 30 pounds of force using her right hand and 30 pounds using her left hand. That's on card 1133 under vital signs in Dr. Karamloo's exam. Ten times more than she said that she could lift. Dr. Kashi alleged difficulty with pain in her neck. Dr. Karamloo's exam shows normal neck range of motion. She alleged debilitating pain. Dr. Karamloo's exam shows no pain on motion in the extremities. She alleged swelling. Dr. Karamloo's exam shows no swelling. It also shows sensation intact to light touch. The ALJ referenced activities. He described those activities on card 19. Yes, these are routine activities, but I would turn this Court's attention to SMART. This is very similar to SMART. In SMART, the claimant's allegations similarly were extreme debilitating pain. In SMART, it was 10 out of 10 pain. This Court has held not only can an ALJ discount a claimant's activities when they're transferable to a work setting, but also when they conflict with her allegations. So whereas here, a claimant is alleging total disability, extreme pain, then the ALJ can use activities, even if the claimant has some difficulty performing those activities, to discount such extreme allegations. And that's what we have here. We have a claimant alleging she can lift three pounds, barely walk, and yet she can attend her son's games twice a week. She can nap up to six hours a day, and yet she's able to perform a fairly normal life, even with some assistance. The explanation that counsel's looking for, you're arguing, is really found in the ALJ's finding of the contradictions? Correct. The ALJ discusses extreme allegations of debilitating limitations and symptoms on On CAR 23, the ALJ references those allegations directly, and then ties that to the evidence that the ALJ finds inconsistent with those allegations, and discusses that evidence in more detail throughout the decision. And this Court, as it held in Kauffman, must look to all the pages of the ALJ's decision to determine if substantial evidence supports the ALJ's finding. And I'd also note on CAR 13 through 23, as well as CAR 23, the ALJ noted specific inconsistencies. So for example, the ALJ discussed on CAR 15, she alleges a thyroid disorder, yet she's denying a thyroid disorder to providers. The ALJ discusses on CAR 15 as well, she testified to hearing loss, yet exam showed normal hearing. She testified to vision loss, exam showed normal vision. CAR 15 through 16 alleges problem with memory, exam shows normal memory. So the ALJ is going, if anything, beyond what is required because line by line, he's also going through specific testimony and showing why the evidence contradicts that testimony. If there are no more questions, I'll ask this Court to affirm. No more questions? No. Okay, thank you, counsel. Mr. Prado, I'll give you a minute or so for rebuttal. Thank you, Your Honor. Just quickly, this case, just because a person alleges that they have extreme disabilities and they can do daily activities does not automatically disqualify them. I would say this case is more like the garrison case than the smart case. And I would also like to note that in the record, my client has significant, on significant medications and pain medications, none of which was discussed. And all the things such as a minor finding in the back, a minor degenerated back can cause pain. So that's what we're looking for. Yes, it was easy for the judge to find a handful of little things where he said, you don't have blindness. Okay, she doesn't have blindness. That's why blindness is not part of the RFC. But what our concern is, is the explaining of why that RFC has those limitations, those very limited limitations on standing and walking based on the record. Thank you. Thank you very much, counsel. Sandberg v. King will be submitted.
judges: WARDLAW, JOHNSTONE, UNKNOWN